EDWARDS, APPELLANT, *v.* SADUSKY, APPELLEE.
ALLEN, APPELLANT, *v.* KISAMORE, APPELLEE.

(Nos. 10347 and 10348—Decided February 3, 1982.)

Mr. Michael L. McGowan, for appellants.

Mr. Scott T. Siegfried, for appellees.

BELL, J. Tina Marie Edwards, plaintiff-appellant, filed a paternity complaint against William Sadusky, Jr. on May 14, 1980, alleging herself to be unmarried and pregnant and defendant to be the father of the expected child. Initially, defendant denied paternity but later admitted that he was the father of the child born on November 10, 1980.

Edwards was absent from her job for six weeks due to pregnancy, childbirth and postnatal recovery. During this time she received sick leave and disability payments from her employer. She incurred $3,139.50 in medical expenses pertaining to the pregnancy and birth. Most of the medical expenses were covered by health insurance policies.

At the time of the hearing, Sadusky was earning a net take home pay of approximately $150 per week. His net income in 1980 was $8,539.18. Defendant is paying $27.50 per week to support his child from a former marriage. He has remarried and is supporting his wife and two stepchildren.

Pursuant to R.C. 3111.17, the juvenile court awarded Edwards a judgment of $240 which reflects a sum of $40 per week for her support and maintenance during the six-week period of her absence from work. With regard to medical and hospital expenses, the lower court ordered Sadusky to reimburse plaintiff for her out of pocket expenditures only. Finally, the trial court ordered that defendant pay $27.50 per week for child support. The court did not require defendant to post security for the payment of the court award. Plaintiff appeals the judgment.

Facts of Case No. 10348

Kathy Marie Allen, plaintiff-appellant, filed a paternity complaint against Jeffrey Owen Kisamore, defendant-appellee, alleging that she is unmarried and pregnant and that Kisamore is the father of the expected child. Initially defendant denied paternity but later admitted that he is the father of the child born to Allen on February 22, 1981.

Allen was absent from her job for seven weeks due to pregnancy, childbirth and postnatal recovery. During this time, she received sick leave and disability payments from her employer. Allen incurred $2,728.25 in medical expenses relating to the pregnancy and birth. Most of these expenses were paid by Allen's health insurance carrier. At the time of the hearing, Kisamore was receiving unemployment benefits of $128 per week.

Pursuant to R.C. 3111.17, the juvenile court awarded Allen a judgment of $280 which reflected the sum of $40 per week for her support and maintenance during the seven-week period of her absence from work. With regard to medical expenses, the lower court ordered that plaintiff be reimbursed for out-of-pocket medical expenses only. Finally, the trial court ordered that Kisamore pay plaintiff $15 per week child support while defen-

dant remained unemployed and $27.50 per week when he became employed. The court did not require defendant to give security for the payment of the court award. Plaintiff appeals the judgment.

### Law and Discussion

The factual contents of both cases are very much alike. Both Edwards and Allen were represented by the same attorney below who continues to represent both plaintiffs on appeal. Sadusky and Kisamore were also represented by the same attorney below who also continues to represent both defendants on appeal. The errors assigned in each case are almost identical as are the authorities cited in the briefs. The same legal arguments are made by both plaintiffs and both defendants. Thus, we will discuss the legal ramifications of both cases together, being careful to note instances where slight differences between the cases would require different conclusions.

Both plaintiffs assert the following assignments of error:

### Assignments of Error Nos. 1, 2 and 4

"1. The findings and order of the trial court are contrary to Law and Equity.

"2. The court erred in not awarding the plaintiff a money judgment sum sufficient for the support and maintenance of the plaintiff mother during her six week pre-natal — delivery and convalescence period.

"4. The court erred in not awarding the plaintiff mother a sum sufficient for the necessary expenses caused by the pregnancy and childbirth — the court erred in allowing only out-of-pocket expenses and disregarding the collateral source rule in Ohio."

In both cases, the trial court determined that the plaintiffs' medical and hospital expenses had, in large part, been paid by health insurance carriers, and that both plaintiffs had been compensated for their time off work due to pregnancy

and childbirth by disability payments made by their respective employers. Plaintiffs argue that R.C. 3111.17 and the collateral source rule require the court to order defendants to reimburse plaintiffs these sums of money. We disagree.

R.C. Chapter 3111 modifies the common law. The rights, remedies, defenses and liabilities of the parties must be ascertained and discharged in the manner prescribed by the statute. Thus, the statutes relating to paternity proceedings should not be enlarged by implication beyond the words actually used. 7 Ohio Jurisprudence 2d 541-542, Bastardy, Section 5.

R.C. 3111.17 requires the court to order a defendant to "* * * pay to the complainant the sum the court finds necessary for her support and maintenance, and the necessary expenses caused by pregnancy and childbirth * * *."

The statute does not mention the collateral source rule, and there is no statutory language to infer a legislative intent that said rule apply. The purpose of the paternity statute is to compel the father of an illegitimate child to bear the expenses of childbirth and child support so that the mother will not be solely responsible for that support and so that the child will not be a financial burden on the state. See *Johnson* v. *Norman* (1981), 66 Ohio St. 2d 186 [20 O.O.3d 196], and *State, ex rel. Gill,* v. *Volz* (1951), 156 Ohio St. 60 [45 O.O. 63]. The statute does not intend to give the mother a windfall award for having an illegitimate child. Thus, the trial court properly considered the insurance payments and disability benefits received by both plaintiffs in determining the necessary sums needed by the plaintiffs to pay medical expenses and to support themselves during pregnancy, delivery, and postnatal convalescence.

Plaintiffs further argue that R.C. 3111.17 requires the court to determine the amount necessary to support and

maintain the mother during this period of time and to award this amount to the mother regardless of either the mother's financial situation or the father's ability to pay. Thus, according to plaintiffs, a $40 per week award for the periods of time involved is so grossly inadequate in light of economic realities as to be an abuse of discretion.

The support and maintenance award is a function of both the mother's needs and the father's ability to pay. *State, ex rel. Raydel,* v. *Raible* (App. 1954), 69 Ohio Law Abs. 356. See, also, 7 Ohio Jurisprudence 2d 566, Bastardy, Section 34. The court below properly considered both defendants' financial situations. Considering these factors, we believe the lower court acted within its discretion in fixing plaintiffs' support and maintenance awards. We overrule plaintiffs' first, second and fourth assignments of error.

### Assignment of Error No. 3

"The court erred in not awarding the plaintiff a money judgment sum for back support of the child from date of delivery of the child to date of judgment."

Case law clearly holds that the lower court may order a lump sum judgment for child support from the date of the delivery of the child to the date of the paternity adjudication. *State, ex rel. Gill,* v. *Volz, supra*; *State, ex rel. Raydel,* v. *Raible, supra*; and *Willis* v. *Wilson* (1947), 83 Ohio App. 311 [38 O.O. 1]. The issue in the instant cases is whether such an award is mandatory.

Our decision on this issue is controlled by *State, ex rel. Fisher,* v. *Davis* (Nov. 6, 1944), Summit App. No. 3687, unreported, which held:

"* * * It is our opinion that the trial court in the instant case erred to the prejudice of the plaintiff in its refusal to make an allowance for the time in controversy. [The period from the birth of the child to the court's adjudication of paternity.] * * *"

We construe this language to mean that the trial court must award child support from the date of the child's birth.

Plaintiff Allen further assigns as error the trial court order of "* * * a payment of $27.50 a week when the defendant [Kisamore] becomes employed, without taking into consideration exactly what the future weekly earning of the defendant might be."

We do not agree.

Such an order encourages the father to find employment. Further, the juvenile court has continuing jurisdiction over the matter and, thus, may modify the award, if necessary, to conform to Kisamore's income when he becomes employed.

We affirm plaintiffs' third assignment of error with respect to awarding child support from the births. However, we overrule plaintiff Allen's assignment of error regarding the amount of child support awarded when defendant Kisamore becomes employed.

### Assignment of Error No. 5

"The court erred in not ordering the defendant to post bond to fulfill his obligations under O.R.C. Sec. 3111.17."

R.C. 3111.17 provides:

"* * * The court shall further require the reputed father to give security for the payment of support, maintenance, and necessary expenses of the complainant caused by the pregnancy and childbirth, together with the costs of prosecution. If the accused neglects or refuses to give such security, other than for the payment of costs, he shall be committed to the jail of the county, there to remain, except as provided in section 3111.18 of the Revised Code, until he complies with the order of the court. * * *"

The security provision of the statute pertains to that amount of money awarded to the respective complainants for their support, maintenance and necessary expenses caused by childbirth together with the costs of the prosecutions. In the instant cases, the juvenile court had authority to order Kisamore to give secur-

ity for $280 and Sadusky to give security for $240 plus costs of the prosecutions and out-of-pocket medical expenses. The issue is whether the lower court's authority is mandatory or discretionary.

As a general rule of statutory construction, the word "shall" shall be construed as mandatory unless there appears a clear and unequivocal legislative intent that it receive a construction other than its ordinary usage. *Dorrian* v. *Scioto Conserv. Dist.* (1971), 27 Ohio St. 2d 102 [56 O.O.2d 58].

Clearly, if defendants paid the judgment, a mandatory posting of security would be meaningless. Further, the statute itself specifically preserves the complainants' remedy of attachment and execution on the judgment. Thus, we hold that the provision for a court order that defendants give security is one of several remedies for securing payment of the judgment and is within the sound discretion of the lower court. In the instant case, we do not believe the lower court abused that discretion. We overrule plaintiffs' fifth assignment of error.

Pursuant to App. R. 12(B), the judgments of the Summit County Juvenile Court are modified in the sum of $366.45 to plaintiff Allen and in the sum of $1,084.33 to plaintiff Edwards.

The judgments are affirmed as modified.

*Judgments affirmed as modified.*

VICTOR, P.J., and MAHONEY, J., concur.