**LEWIS et al., Appellants,**

v.

CHAPIN, **Appellee.**

[Cite as *Lewis v. Chapin* (1994), 93 Ohio St.3d 695.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 64232, 64233.

Decided March 21, 1994.

*Steven E. Wolkin,* for appellant Barbara E. Lewis.

*John H. Lawson,* for appellant Alexander Joseph Lewis Chapin.

*Michael G. Chapin, pro se.*

DONALD C. NUGENT, Judge.

This is an appeal from a decision of the Cuyahoga County Court of Common Pleas, Juvenile Division, which entered a final judgment denying a motion for arrearage of child support filed by plaintiff-appellant, Barbara E. Lewis (hereinafter "appellant") and joined in by Lewis's minor son, plaintiff-appellant, Alexander Joseph Lewis Chapin (hereinafter "minor appellant").

On July 31, 1991, appellant and minor appellant initiated the present action by filing an application to determine custody, a motion to set support, and a motion for arrearage against defendant-appellee, Michael G. Chapin, the minor appellant's natural father. Chapin had previously filed an acknowledgment, consented to by appellant, in the Cuyahoga County Court of Common Pleas, Probate Division, admitting that he is the minor appellant's natural father. Consequently, the probate court filed an entry legitimating the father-child relationship on September 2, 1980. However, in the present case, appellee filed no pleadings and otherwise failed to make an appearance.

On October 3, 1991, a hearing was held wherein the juvenile court granted custody of the minor appellant to appellant and ordered appellee to pay child support in the amount of $190 per month.

On March 4, 1992, counsel for the minor appellant filed a motion for a further hearing on the matter of child support arrearages. The matter came on to be heard on April 28, 1992. In an entry dated July 14, 1992, the juvenile court, however, found that there "exists no statutory basis for a finding of arrearage in support or for the payment of attorney fees under R.C. 2151.23(B)(4)." The juvenile court further found that jurisdiction did not extend to the present case pursuant to R.C. Chapter 3111, or R.C. 2151.23. Finally, the juvenile court noted that had the appellant and appellee not filed an acknowledgment of the parent-child relationship pursuant to R.C. 2105.18, upon the filing of a complaint to determine the parent-child relationship pursuant to R.C. 2151.23(B)(2) and R.C. Chapter 3111, an arrearage in child support would have been ordered pursuant to the Ohio Revised Code.

Appellant and minor appellant timely appeal from the July 14 decision. Appellant raises the following sole assignment of error, which is joined in by the minor appellant:

"Did the trial court err in dismissing the motion for arrearage and in failing to extend jurisdiction pursuant to Ohio Revised Code, Section 3111, et seq.?"

The present case raises unique issues of law which appear to be of first impression in Ohio. Appellant and minor appellant (born March 6, 1975) are

attempting to bring an action to recover child support arrearages[1] by invoking Ohio's Uniform Parentage Act as codified in R.C. 3111.01 through 3111.19. However, the establishment of parentage, *i.e.*, the father-child relationship, is not being sought by either appellant. In fact, appellants rely on an acknowledgment, signed by the father-appellee, and consented to by the mother-appellant, filed by the probate court legitimating the father-child relationship between appellee and the minor appellant as establishing appellee's duty of support. The juvenile court, however, dismissed appellants' motion for arrearages, holding that there was no statutory basis for a finding of arrearages in child support, apparently believing that the legitimation order filed in probate court barred a subsequent parentage action. The issue to be decided by this court is, therefore, whether a juvenile court has statutory authority to award child support arrearages to the mother and/or minor child upon a motion for child support arrearages filed by the mother and minor child in a parentage action brought pursuant to R.C. 2151.-23(B)(2) and 3111.01 through 3111.19 where the father has acknowledged the father-child relationship and the mother has consented to the filing of a legitimation order by a probate court pursuant to R.C. 2105.18.[2] The juvenile court answered the question in the negative and dismissed appellants' motion for arrearages. For the reasons that follow, we reverse and hold that a juvenile court has statutory authority to award child support arrearages under such circumstances.

---

1. A common-law action for necessaries would appear to be barred by the statute of limitations. See R.C. 2305.09; and *Manley v. Howard* (1985), 25 Ohio App.3d 1, 25 OBR 30, 495 N.E.2d 436, paragraph two of the syllabus. However, the statute of limitations for a parentage action does not begin to run until the child reaches the age of majority. *Id.*, paragraph one of the syllabus. Moreover, in a parentage action, absent a defense, a court may award child support from the date of the child's birth to the date of the paternity adjudication. See *Edwards v. Sadusky* (1982), 4 Ohio App.3d 297, 4 OBR 548, 448 N.E.2d 506, paragraph three of the syllabus.

2. R.C. 2105.18, at the time of the hearing, provided as follows: ·
   "The natural father of a child may file an application in the probate court of the county in which he resides, in the county in which the child resides, or the county in which the child was born, acknowledging that the child is his. If an application is filed, upon consent of the mother or, if she is deceased, incompetent, or has surrendered her parental rights and responsibilities for the care of the child and her right to have the child live with her and to be the legal guardian of the child, upon consent of the person or agency having custody of the child or of a court having jurisdiction over the child's custody, the probate court, if satisfied that the applicant is the natural father and that establishment of the relationship is for the best interest of the child, shall enter the finding of fact upon its journal. Thereafter, the child is the child of the applicant, as though born to him in lawful wedlock, and, if the mother is unmarried, the applicant, the parents of the applicant, any relative of the applicant, the parents of the mother, and any relative of the mother may file a complaint pursuant to section 3109.12 of the Revised Code requesting the granting under that section of reasonable companionship or visitation rights with respect to the child." Am.Sub.S.B. No. 3, 143 Ohio Laws, Part I, 53, 62.

The juvenile court apparently decided the issue on authority of *Gilbraith v. Hixson* (1987), 32 Ohio St.3d 127, 512 N.E.2d 956, which holds, at its syllabus:

"The doctrine of *res judicata* can be invoked to give conclusive effect to a determination of parentage contained in a dissolution decree or legitimation order, thereby barring a subsequent paternity action brought pursuant to R.C. Chapter 3111."

However, as will be seen, the *Gilbraith* decision does not bar a subsequent parentage action in the case *sub judice*.

Appellant raises three arguments in support of her assignment of error. First, appellant argues that the juvenile court possesses jurisdiction pursuant to R.C. 2151.23(B)(2) and 3111.06 to hear her motion for arrearages of child support. Next, appellant states that R.C. 3111.13 requires a juvenile court to enter judgment in the event of the establishment of paternity. Finally, appellant contends it is a violation of the Equal Protection Clause and Due Process Clause of the United States Constitution and of public policy to dismiss a motion for arrearages in a paternity action where a legitimation order has been filed, while allowing the payment of arrearages of child support had the legitimation order not been filed. The minor appellant adds the additional argument that he has a separate claim for child support arrearages which is not barred by the filing of the legitimation order since he was not a party to such order.

Jurisdiction in the juvenile courts is conferred by R.C. 2151.23, which provides:

"(A) The juvenile court has exclusive original jurisdiction under the Revised Code:

" * * *

"(2) To determine the custody of any child not a ward of another court of this state[.]

" * * *

"(B) The juvenile court has original jurisdiction under the Revised Code:

" * * *

"(2) To determine the paternity of any child alleged to have been born out of wedlock pursuant to sections 3111.01 to 3111.19 of the Revised Code;

" * * *

"(4) To hear and determine an application for an order for the support of any child, if the child is not a ward of another court of this state[.]"

Appellants do not contest the juvenile court's orders concerning current child support and custody of the minor appellant. Appellants only contest the juvenile court's order dismissing their motion for arrearages in child support. As

previously stated, appellants argue that R.C. 2151.23(B)(2) and 3111.01 through 3111.19 authorize a juvenile court to issue an order awarding child support arrearages.

R.C. 2151.23(B)(2), as previously quoted, confers upon a juvenile court jurisdiction to hear a parentage action. Moreover, R.C. 3111.06(A) provides in part that "[t]he juvenile court has original jurisdiction of any action authorized under sections 3111.01 to 3111.19 of the Revised Code."

Appellants argue that the establishment of the parent-child relationship can be accomplished in a variety of ways and that a parentage action is just one way of establishing such a relationship. At the time of the hearing, R.C. 3111.02 provided in part that "[t]he parent and child relationship between a child and the natural father of the child may be established pursuant to sections 3111.01 to 3111.19 of the Revised Code."[3] Sub.H.B. No 476, 141 Ohio Laws, Part II, 4502, 4505. Citing *In re Custody of Davis* (1987), 41 Ohio App.3d 81, 534 N.E.2d 945, appellants argue that the father-child relationship may be established for all legal purposes by adoption or legitimation pursuant to R.C. 2105.18.

*In re Custody of Davis, supra,* involved an action for custody and child support against the alleged father. The juvenile court issued an order for custody, support and visitation. The Court of Appeals for Guernsey County affirmed and held that an action for custody and support can be based upon an R.C. 2105.18 order of legitimacy filed by the probate court wherein the father acknowledges paternity. In so concluding, the court of appeals rejected the argument that an R.C. 2105.18 acknowledgment of paternity was valid only for purposes of descent and distribution and held that such acknowledgment is a judicial determination of parentage and establishes a full parent-child relationship for all legal purposes. *Id.* at 83, 534 N.E.2d at 947; but, see, *In re Mancini* (1981), 2 Ohio App.3d 124, 2 OBR 138, 440 N.E.2d 1232.

The Ohio Supreme Court's decision in *Gilbraith, supra,* gives additional support to appellants' contention that paternity can be established through a legitimation order pursuant to R.C. 2105.18. In *Gilbraith,* the appellant filed a paternity action in common pleas court seeking a judicial determination that he

---

**3.** However, 1992 Am.Sub.S.B. No. 10 became effective on July 15, 1992, only two and one-half months after the hearing in the instant matter. Am.Sub.S.B. No. 10 amended R.C. 3111.02, which now provides in pertinent part:

" * * * The parent and child relationship between a child and the natural father of the child may be established by a probate court entering an acknowledgment upon its journal as provided in section 2105.18 of the Revised Code, and pursuant to sections 3111.01 to 3111.19 or 3111.20 to 3111.29 of the Revised Code. * * * "

See, also, amended R.C. 3111.03, which sets forth a rebuttable presumption of parentage where the man and mother, after the child's birth, married or attempted to marry and a court, with his consent, enters upon its journal an acknowledgment of paternity.

was not the minor child's natural father.  The trial court dismissed appellant's paternity action on the grounds that in an earlier separation agreement and in an acknowledgment filed in the probate court, appellant had admitted that he was the minor child's natural father.  The court of appeals reversed, holding that neither the legitimation order nor the dissolution decree barred the paternity action.  The Ohio Supreme Court reversed the court of appeals and, as previously noted, held that the doctrine of *res judicata* can be invoked to give conclusive effect to a determination of parentage contained in a dissolution decree or a legitimation order, thereby barring a subsequent paternity action brought pursuant to R.C. Chapter 3111.  See, also, *Collett v. Cogar* (1988), 35 Ohio St.3d 114, 518 N.E.2d 1202 ("Where there is no prior judgment of paternity [the alleged father having signed only an acknowledgment but the probate court never having filed it], the doctrine of *res judicata* does not act as a bar to a legitimation [parentage] action subsequently brought by or on behalf of a child under R.C. Chapter 3111." *Id.*, syllabus.); *Kashnier v. Donelly* (1991), 81 Ohio App.3d 154, 610 N.E.2d 519 (*res judicata* based on parties' prior dissolution decree); *Nelson v. Pleasant* (1991), 73 Ohio App.3d 479, 597 N.E.2d 1137 (*res judicata* based on agreed entry under R.C. 3111.19); and *LaBonte v. LaBonte* (1988), 61 Ohio App.3d 209, 572 N.E.2d 704 (*res judicata* did not bar action where divorce decree did not contain finding that child was born as issue of marriage).

In *Gilbraith, supra,* the Supreme Court noted that "under the doctrine of *res judicata* * * * '[a] final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction is conclusive of rights, questions and facts in issue as to the parties and their privies, and is a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privity with them.' " *Gilbraith, supra,* 32 Ohio St.3d at 128, 512 N.E.2d at 958.  The court went on to explore the issue of whether there exists, on grounds of public policy, a persuasive reason for holding that *res judicata* should not apply in parentage actions.  The court reasoned:

"Our starting point here is the recognition that the doctrine itself has deep roots in the policy considerations that have shaped the operation of this country's legal system.  As the United States Supreme Court has said, ' * * * "[the] doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours.  It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts * * *." ' * * *

"Simply put, the doctrine serves vital public interests by assuring that all litigation has a reasonable ending point and by preventing a party from having to contest the same issue or cause more than once.  * * * ' "[P]ublic policy dictates that there be an end of litigation;  that those who have contested an issue shall be

bound by the results of the contest, and that matters once tried shall be considered forever settled as between the parties." ' * * * In achieving precisely these ends, the doctrine effectively promotes stability, certainty, respect, consistency and finality, both in individual judicial determinations and in the legal system as a whole.

"In our estimation, the same considerations underpinning *res judicata* as a doctrine of general significance apply with equal force in parentage actions, and there is, accordingly, no sound policy reason for denying effect to the doctrine in such cases. The establishment and maintenance of the various aspects of the relationship between parent and child is a particularly intricate, sensitive and emotional process with which courts should be reluctant to interfere. In those cases where, by force of events, judicial intervention occurs, where the matter of parentage is determined with finality and in the absence of fraud, and where that determination is not later vacated, either on direct appeal or pursuant to a recognized legal remedy such as that set forth in Civ.R. 60(B), the policy of this state requires, in sum, that the parent-child relationship be shielded from the unsettling effects of further judicial inquiry, and that relitigation of parentage be barred, as a general rule, in any subsequent actions, including those initiated under R.C. Chapter 3111." (Citations omitted). *Id.,* 32 Ohio St.3d at 130–131, 512 N.E.2d at 960–961.

In *Gilbraith,* the public policy concerns weigh heavily in favor of the doctrine of *res judicata.* By applying the doctrine in *Gilbraith,* the court ensured "a reasonable ending point" to litigation so as to promote stability, certainty, respect, consistency and finality in judicial determinations and in the legal system as a whole. Thus, the parent-child relationship remained shielded from further judicial inquiry. In the present case, however, the policy considerations are outweighed when considered against the importance of providing for the health, maintenance, welfare and well-being of the children of this state. Public policy dictates that parents remain responsible for their children's well-being. R.C. 3111.01 through 3111.19; R.C. 3111.20 through 3111.29; *Franklin v. Julian* (1972), 30 Ohio St.2d 228, 59 O.O.2d 264, 283 N.E.2d 813; *Johnson v. Norman* (1981), 66 Ohio St.2d 186, 20 O.O.3d 196, 421 N.E.2d 124; R.C. 3103.03 (statutory duty); R.C. 3113.31; R.C. 3113.04; R.C. 2919.21; R.C. 2919.22; R.C. 2919.23; and R.C. 2919.231.

" 'A father's natural duty to support his children is generally recognized. In Ohio, this duty is enjoined by both statute and common law. * * *' *Kulcsar v. Petrovic* (1984), 20 Ohio App.3d 104, 105, 20 OBR 126, 126–127, 484 N.E.2d 1365, 1366. Indeed, this duty has been variously characterized as a 'principle of natural law,' *Pretzinger v. Pretzinger* (1887), 45 Ohio St. 452, 458, 15 N.E. 471, 473, which is fundamental in our society. *In re Terrell* (1976), 48 Ohio App.2d

352, 353, 2 O.O.3d 353, 354, 357 N.E.2d 1113, 1115; *Children's Hosp. v. Johnson* (1980), 68 Ohio App.2d 17, 18, 22 O.O.3d 11, 426 N.E.2d 515, 516." *Aharoni v. Michael* (1991), 74 Ohio App.3d 260, 263, 598 N.E.2d 1215, 1217.

Thus, this court concludes that application of the doctrine of *res judicata* in the case *sub judice* would violate this state's strong public policy favoring the protection of children and their support, health, maintenance and welfare. Moreover, we note that the issue of parentage is not being relitigated; rather, it is the issue of child support arrearages which is the subject of litigation. Thus, the issue of parentage is not being contested, and the parent-child relationship is shielded from the unsettling effects of further judicial inquiry.

Application of the doctrine of *res judicata* in the case *sub judice* would also violate the Equal Protection Clauses of both the United States Constitution [4] and the Ohio Constitution.[5] Allowing the doctrine of *res judicata* to bar an action for child support arrearages on the basis that appellee's and minor appellant's father-child relationship and all the rights attendant thereto have been conclusively established by an acknowledgment and legitimacy order filed in the probate court would deny appellant and minor appellant child support from the date of birth up to the filing of the instant action for child support, while allowing child support arrearages for those pursuing a parentage action where such issues have not already been established through a legitimacy filing. The result, in effect, would punish those who, in an attempt to take responsibility for their children, consent to a legitimacy filing.

Section 2, Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution guarantee every person equal protection under the law. Both constitutional provisions place the same limits on governmental classifications. *Kinney v. Kaiser Aluminum & Chem. Corp.* (1975), 41 Ohio St.2d 120, 123, 70 O.O.2d 206, 207, 322 N.E.2d 880, 882; *McQueen v. Hawkins* (1989), 63 Ohio App.3d 243, 245, 578 N.E.2d 539, 540. "The equal protection guarantee is designed to ensure that similar people are treated in a similar fashion." *McQueen, supra,* citing *Colgate v. Harvey* (1935), 296 U.S. 404, 422–423, 56 S.Ct. 252, 255–256, 80 L.Ed. 299, 307. The constitutional guarantee

---

4. The Fourteenth Amendment to the United States Constitution provides:

"* * * nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

5. Section 2, Article I of the Ohio Constitution provides:

"All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the general assembly."

only prevents invidious discrimination. *Harris v. McRae* (1980), 448 U.S. 297, 322, 100 S.Ct. 2671, 2690, 65 L.Ed.2d 784. "Unless a fundamental right or suspect classification is involved, the classification is constitutional if it is rationally related to a legitimate end of government." *McQueen, supra,* 63 Ohio App.3d at 245, 578 N.E.2d at 540.

In *McQueen,*[1] the Lucas County Court of Appeals held that the failure of the legislature to include in Ohio's adoption of the Uniform Parentage Act a provision for the payment of attorney fees as costs denies the mother equal protection of law where a mother is allowed attorney fees in a child support award in a divorce proceeding. Likewise, we hold that it is a violation of the Equal Protection Clauses of the United States and Ohio Constitutions to apply the doctrine of *res judicata* to bar a mother or a child in a parentage action from recovering child support arrearages on the basis that the parent-child relationship and all rights attendant thereto have been conclusively established in a legitimacy filing in a probate court. There does not appear to be any rational reason for allowing a party in a parentage action child support arrearages when the party has not consented to the filing of a legitimacy order while barring child support arrearages to a party in a paternity action who has consented to the filing of a legitimacy order.

The minor appellant's assertion that he is not barred under the doctrine of *res judicata* from pursuing a parentage action on the basis that appellee acknowledged the existence of the parent-child relationship and that appellant consented to the filing of a legitimacy order is also well taken. It is well settled that in order for a judgment to be *res judicata,* there must be an identity of parties and identity of issues. *Rees v. Heimberger* (1989), 60 Ohio App.3d 45, 573 N.E.2d 189. " 'Parties' includes those who are interested in the subject matter of the suit, who have a right to make a defense or who have a right to control the proceedings." *Id.* at 46, 573 N.E.2d at 191, citing *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10. " 'As a general rule, privity does not arise out of the parent-child relationship. * * * In a paternity proceeding, as in an action to recover damages for injury to a minor child, the claim of a parent and that of the child relate to the same subject matter; however, the claims are separate and distinct.' *Viera v. Woolum* (Aug. 6, 1987), Franklin App. No. 86AP–867, unreported at 3 [1987 WL 15311]." *Id.* Thus, the minor appellant's claim is not barred by the doctrine of *res judicata* as the minor appellant was not a party, or in privity with a party, to the legitimacy order.

Finally, we agree with appellants' argument that the defense of *res judicata* is an affirmative defense which must be raised in the pleadings; otherwise it is waived. *State ex rel. Freeman v. Morris* (1991), 62 Ohio St.3d 107, 579 N.E.2d 702. Although the paternity action took place in front of the juvenile

division of the common pleas court, the Civil Rules of Procedure apply rather than the Juvenile Rules. See R.C. 3111.08(A); Juv.R. 1(C)(4); and *Nelson v. Pleasant, supra.* Moreover, Civ.R. 8(C) requires a party to set forth the affirmative defense of *res judicata* to a pleading. Appellee in the present action has failed to plead or otherwise make an appearance on record and has therefore waived the defense of *res judicata.*

This court, having previously determined that application of the doctrine of *res judicata* to the present proceedings would violate public policy as well as the Equal Protection Clauses of the United States Constitution and the Ohio Constitution, must next consider appellants' contention that R.C. 3111.13 provides for a judgment in the event of the establishment of paternity.

R.C. 3111.04(A) provides that "[a]n action to determine the existence or nonexistence of the father and child relationship may be brought by the child or the child's personal representative, the child's mother or her personal representative * * *." Moreover, R.C. 3111.08(B) provides that "[i]f the person against whom the action is brought does not appear personally or by counsel at a pretrial hearing scheduled under section 3111.11 of the Revised Code, the opposing party may file a written motion for default judgment against the person. The motion, along with a notice of the date and time when it is to be heard, shall be served upon the person in the same manner as is provided for service of a complaint under the Rules of Civil Procedure. The court may render a judgment by default against the person after hearing satisfactory evidence of the truth of the statements in the complaint."

Appellee failed to make an appearance personally or through counsel at any stage of the litigation. Moreover, the record does not reveal whether a pretrial conference was scheduled or conducted pursuant to R.C. 3111.11. Therefore, this court will remand the instant proceeding so that a pretrial conference can be scheduled in accordance with R.C. 3111.11. Appellants may then file a motion for default judgment, if appropriate. After notice and hearing, the juvenile court may then comply with the final sentence of R.C. 3111.08(B).

If satisfied with the truth of the statements in the complaint, the juvenile court may then enter judgment in accordance with R.C. 3111.13, which provides:

"(C) The judgment or order may contain any other provision directed against the appropriate party to the proceeding, concerning the duty of support, the furnishing of bond or other security for the payment of the judgment, or any other matter in the best interest of the child. The judgment or order shall direct the father to pay all or any part of the reasonable expenses of the mother's pregnancy and confinement. * * *"

■ We therefore hold that R.C. 3111.08 and R.C. 3111.13 allow a juvenile court to enter judgment in a paternity action upon satisfactory evidence of paternity.[6]

Based on the foregoing, appellants' sole assignment of error is sustained.

The judgment of the common pleas court, juvenile division, overruling appellants' motion for child support arrearages is reversed and the cause remanded for further proceedings in accordance with this opinion.

*Judgment reversed*
*and cause remanded.*

NAHRA, P.J., and BLACKMON, J., concur.

---

6. Due to the extraordinary lapse of time between the minor appellant's date of birth (March 6, 1975) and the filing of the instant proceedings (July 3, 1991), this court is well aware of the potential inequities involved in remanding this matter for further proceedings in order to determine whether an award of child support arrearages is appropriate. Because appellee has failed to make an appearance personally or through counsel at any stage of the proceedings, it would appear that appellee has waived the defense of laches. See Civ.R. 8(C); *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 12 OBR 1, 465 N.E.2d 377. However, we believe the juvenile court is well equipped to deal with the unique factual situation presented by the case *sub judice*. The juvenile court has discretion is fashioning an appropriate award based on the mother's needs and the father's ability to pay. *State ex rel. Raydel v. Raible* (App.1954), 69 Ohio Law Abs. 356, 117 N.E.2d 480. The juvenile court may consider the father's financial situation while keeping in mind that the paternity statute does not intend to give the mother a windfall award. See *Edwards v. Sadusky* (1982), 4 Ohio App.3d 297, 299–300, 4 OBR 548, 549–550, 448 N.E.2d 506, 508–510.