{¶ 1} This is an appeal from a judgment entered January 26, 2006 by the juvenile court division ordering child support, denying past care, and denying prepayment credit for two minor children. After reviewing the facts of the case and the pertinent law, we affirm.
 {¶ 2} On April 23, 2004 an administrative hearing was held at the Cuyahoga Support Enforcement Agency "CSEA" to determine child support and medical support for the parties' two children.[1] Subsequently, on May 6, 2004, the hearing officer filed *Page 3 
an Administrative Support Order, P-00840068, ordering Ronald J. Pesek ("Father") to pay child support for both children in the amount of $810.96 per month ($405.48 per month per child), plus two percent administrative fee. Linda M. Berkopec-Pesek ("Mother") was ordered to maintain medical insurance. Both parties were ordered to equally share any reasonable unreimbursed medical costs not covered by insurance. It is this administrative support order that brought these issues before the juvenile court division. Father filed an objection/appeal on June 25, 2004, and Mother filed a counterclaim for past care on July 29, 2004.
 {¶ 3} Numerous hearings were had and a trial commenced on August 2, 2005, concluding on November 1, 2005. Prior to trial, the parties stipulated and agreed to the amount of child support as determined by the administrative hearing officer.[2] At trial, Mother argued for past care and birthing expenses for the two children, while Father argued for prepayment credit toward child support payments he allegedly made to Mother for the two children. The following evidence was presented.
 {¶ 4} Appellant, Mother, and appellee, Father, were never married to each other. They became involved in an ongoing intimate relationship after they met at their job teaching at the same school in the Cleveland School District in 1993. The parties were desirous of having a child together and began a program of artificial *Page 4 
insemination, from which, eventually, Mother became pregnant. On August 7, 1995 Mother gave birth to their son, Ronald Pesek Jr. On April 3, 1997, Mother gave birth to their second son, Myron Pesek.[3] Father testified he saw and cared for the children as often as he could. Mother became pregnant for the third time in 1998 but miscarried. Sometime between 2003 and 2004, the parties ended their relationship.
 {¶ 5} During all times that Father was involved with Mother, he was legally married to another woman, Karen Pesek. Karen Pesek was not able to bear children nor was she aware of the children her husband had fathered with Mother.
 {¶ 6} Father introduced a writing by Mother (Appellee's trial exhibit 9) which he claimed was written while she was pregnant with their first child. Father claimed the document was Mother's expectations of support for her and Ronald Jr. by Father. Mother contends the writing was just ideas on how to handle their situation, and she said Father never agreed to it.
 {¶ 7} On February 9, 1995 Mother wrote a letter (Appellee's trial exhibit 10) which stated "I want it known that I write this of my own freewill and accord that I neither desire or need any financial, physical, or mental assistance from the Father, Ronald J. Pesek, for this baby."
 {¶ 8} On August 18, 1997, Mother filed an application to change her name to Pesek (Appellee's trial exhibit 13). She later withdrew this application on September *Page 5 
26, 1997 (Appellee's trial exhibit 14) but filed a second application that same day to change her name to Berkopec-Pesek. (Appellee's trial exhibit 15).
 {¶ 9} Mother requested Title IV-D services at the CSEA to determine paternity for Myron Pesek and child support for both boys in May 2002. Paternity of the child Ronald J. Pesek Jr. was formerly recognized through probate court, case no. 1124522 on January 3, 1996. On May 13, 2002 the parties executed a paternity affidavit for the child Myron Pesek that has been recorded with the Centralized Paternity Registry.
 {¶ 10} Mother submitted two letters (Appellee's trial exhibit 1 and 5) to CSEA, one dated May 14, 2002, requesting that they ban efforts to issue a child support order for the reason that the parties had worked things out and they would resolve matters amongst themselves. Consequently, the CSEA dismissed its administrative proceedings.
 {¶ 11} On May 14, 2002, Mother signed a receipt for $75,000 representing child support received from Father. (Appellee's trial exhibit 3).
 {¶ 12} On February 3, 2003, Mother signed a receipt for $25,000 representing child support received from Father. (Appellee's trial exhibit 4).
 {¶ 13} On February 19, 2003, Mother signed a receipt, under oath before a notary public, that "Ronald J. Pesek Sr. is giving $200,000 for child support/care of Ronald Jr. and Myron A. Pesek." (Appellee's trial exhibit 2).
 {¶ 14} Father testified that he paid Mother a little over $200,000 in cash, exactly $207,000.00, during the course of their relationship. Father asserts, he did not give *Page 6 
Mother $200,000 in one lump sum; rather, it was actually the total amount of cash he gave her over time and that the total was agreed upon by Mother and him. Father testified that he could not remember the dates and times when he gave the cash to Mother but said he usually gave her the money at her home. He claimed he wrote the information down in a notebook but, later burned most of the notebook when he had the $200,000 receipt because he didn't want his wife to find it. Father also submitted undated notes (See Appellee's trial exhibit 8) but the trial court did not find them of value as they were self serving and undiscernible. Father testified, cash was the only source of payment made to Mother. Thus, there was no paper trail of traceable assets.
 {¶ 15} Father stated he worked as a teacher with the Cleveland school system since 1973 when he retired in 2001 with a cognitive disability as a result of his involvment in an ATV accident. His average teaching salary from 1973 to 2001 was $40,000 a year.
 {¶ 16} Father claimed he withheld approximately $300 a month from his pay checks and that his wife managed the rest of their finances. He also received $108 a month from a military disability pension. Father stated that he kept the money in a tool box and coffee cans in the garage and that he also had a safe in the basement. Father stated about ninety-five percent of that money was given to Mother for the children or he spent it directly on the children. Father further testified the rest of the money he gave to Mother was borrowed from his family: $15,000 from his brother William, $20,000 from his Uncle John, and the rest from his parents. Myron Pesek, *Page 7 
Fathers own dad, died in 1998. Father testified the most he had in his tool box at one time was at least $100,000 and at least $30,000 in the safe.
 {¶ 17} Father presented two witnesses. Gary Decker, the first witness, a neighbor, testified he saw cash exchange from Myron Pesek to Father but he couldn't say exactly how much cash or how the cash was used. Also, William Pesek, (Father's brother), testified on behalf of Father that he gave Father $15,000 in cash and that he understood it was for his two nephews. However, William Pesek did not know if the money was actually given to Mother for the children or how it was used. William Pesek further testified that it was common practice for his parents to give the children cash and that they treated the children equally. William Pesek stated he received at least $40,000 to $50,000 in cash from his parents and believed Father would have received the same amount.
 {¶ 18} On January 6, 2004, Mother again approached the CSEA and requested Title IV-D services to establish a child support order for the children.
 {¶ 19} On April 21, 2004, Mother signed an affidavit, under oath, before a notary public, which explained that she signed the previous receipts and affidavit because Father forced her to sign them. Mother stated, Father is a former Vietnam Veteran and that he threatened to kill her and made threats that he would never see the children. Mother claimed she signed the first receipt on May 14, 2002 for $75,000 because Father agreed to sign the paternity agreement for Myron Pesek. Mother further stated Father never gave her any money to support the children. *Page 8 
 {¶ 20} Mother testified that she received an average salary of $40,000 a year while working as a teacher. Mother further explained that she was able to purchase a $396,000 house and make improvements, including $40,000 to $45,000 worth of renovations on the basement, with the money she received from selling her old house, selling an ice cream business, selling properties she owned, her father's pension, and with help from her mother who was living in the home.
 {¶ 21} The trial court states in its judgment entry, filed January 26, 2006, "this court, after hearing the testimony of the parties and reviewing the documentary evidence submitted and after considering trial briefs filed by the parties, and after weighing the nature, value, and truthfulness of the evidence and testimony, and after considering the legal arguments and briefs submitted by counsel in this action makes the following findings." The trial court denied Mother past care and denied any prepayment credit to Father. The court adopted and approved the child support order in total and held the current child support be the amount determined by the administrative hearing officer effective May 26, 2004.[4]
 {¶ 22} The sole issue presented by Mother is whether the trial court erred by failing to award past care from the date of birth until the present.[5] *Page 9 
 {¶ 23} In Mother's first assignment of error, she asserts the court erred as a matter of law in failing to award past care support from the date of birth until the present.
 {¶ 24} Questions of law require de novo review on appeal. Zink v.Zink, 2nd Dist. No. 2006 CA 22, 2007-Ohio-790 at _18. Courts have complete and independent power of review over questions of law.Office of Consumer Counsel v. Public Utility (1979), 58 Ohio St.2d 108,110. Legal determinations are reviewed without any deference to the trial court's conclusions. Travis v. Thompson (June 21, 2001), Cuyahoga App. No 78384, 2001 Ohio App. LEXIS 2757, at 7.
 {¶ 25} Pursuant to R.C. 3111.13, the court is granted authority to award past child support and birthing expenses for a minor child. Moreover, Ohio appellate courts have interpreted R.C. 3111.17, as requiring child support from the date of birth of the child up to the date of the paternity adjudication and until the age of majority.Seegert v. Zietlow (1994), 95 Ohio App.3d 451, 460-461. The court is required to consider all relevant factors including, but not limited to, any monetary contributions either parent of the child made to support the child prior to the court issuing the order requiring a parent to pay an amount for the current support of the child. R.C. 3111.13(F)(2). A juvenile court must use its discretion in awarding support because the intention of the statute is not to give the Mother a windfall award for having an illegitimate child. Lewis v. Chapin (1994),93 Ohio App.3d 695, 706.
 {¶ 26} In reviewing the instant case, we conclude that based upon the evidence presented, neither party is credible regarding child support paid for past or future *Page 10 
support. There is no proof of financial records or documentation of support being paid by Father to Mother because Father claimed to pay Mother in cash. Father attempted to explain where his source of funds came from to pay $200,000 in cash to Mother. He presented two witnesses who could only testify that cash was given to Father but not how it was spent or if it was actually given to Mother for the support of the children. We believe that Father paid some money to Mother but not $200,000 in cash.
 {¶ 27} Further, Mother made conflicting statements as to receiving money from Father as she has testified that she has not received any monies from Father for support of their two children however; she has indicated by her actions that she received money from Father. Mother signed three receipts which purported to indicate that Father gave her money, one of these receipts was executed before a notary public for $200,000. Only five days before the CSEA administrative hearing, Mother wrote out a statement, and had it notarized, stating that she was coerced into signing the receipts. Mother claims Father was a Vietnam Veteran and that he threatened to kill her and that he threatened to never see the children again if she did not sign the receipts.
 {¶ 28} Considering the law and relevant factors that apply to this case, we hold the trial court did not err as a matter of law by failing to award past care from the date of birth of the two children to the present. Thus, Mother's first assignment of error is overruled. *Page 11 
 {¶ 29} In Mother's second assignment of error, she asserts the trial court abused its discretion in failing to award past care support from the date of birth until the present.
 {¶ 30} A trial court has significant discretion in matters calculating child support awards. Magee v. Robinson (Sept. 16, 1998), 9th Dist. No 18896. 1998 Ohio App. LEXIS 4310, at 4, citing Dunbar v. Dunbar (1994),68 Ohio St.3d 369, 371. Therefore, a child support award will not be disturbed on appeal absent an abuse of discretion. Id.
 {¶ 31} In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable. Sullins v. Shanks (May 4, 2000), Cuyahoga App. No. 75576, 2000 Ohio App. LEXIS 1918 at 6.
 {¶ 32} The court in Baugh v. Carver, (1981), 3 Ohio App.3d 139, stated, "while the awarding of a monetary amount for child support is a matter generally within the discretion of the trial court, this does not permit it to ignore the fact that, under R.C. 3111.17, the child is entitled to, and the Father is obligated to provide, support from the date of birth. Where damages for support payments for the period from the date of the child's birth to the date of adjudication are prayed for and proved, it is an abuse of discretion for the court to make no award of child support for that period in the absence of an affirmative demonstration of some circumstance which ought reasonably to relieve the Father of this obligation and the child of this entitlement." Id. at 140-141. *Page 12 
 {¶ 33} The trial court stated after considering the evidence presented "the difficulty in this case is that this court finds neither position is credible." The trial court believed that Father paid some money to Mother but did not find it believable that Father paid $200,000 to Mother. The trial court stated Father did not provide credible evidence as to the source or use of funds. Nor did the court find Mother credible because of her contradictory statements made under oath, as discussed in the previous assignment of error.
 {¶ 34} The trial court decided to leave the parties where it found them as there was no fair or equitable formula to determine how much money had been paid by Father to Mother and both parties were not credible.
 {¶ 35} We find the trial court demonstrated circumstances that reasonably relieve Father of a court order to pay past care.
 {¶ 36} We hold there was no abuse of discretion by the trial court. Mother's second assignment of error is overruled.
 {¶ 37} In Mother's third assignment of error, she alleges the trial court erred inasmuch as its' judgment was against the manifest weight of the evidence.
 {¶ 38} When an appellant challenges a trial court's judgment in a civil action as being against the manifest weight of the evidence, the function of the appellate court is narrowed to an examination of the record to conclude if there is any competent, credible evidence to support the underlying judgment. Nwabara v. Willacy, Cuyahoga App. No. 87724, 2006-Ohio-6414, at _6. A reviewing court will not reverse the trial court's judgment if competent, credible evidence is present. Id. *Page 13 
 {¶ 39} The trial court is in the best position to determine the evidence. The trial court concluded that both parties were not credible and there was no fair or equitable formula to determine how much money had been paid by Father to Mother.
 {¶ 40} We find that there is competent and credible evidence to support the trial court's judgment.
 {¶ 41} We hold the judgment was not against the manifest weight of the evidence. Mother's third assignment of error is overruled.
 {¶ 42} This court will not consider the cross-appeal because a notice of appeal was not filed pursuant to App.R. 3(C)(1) and not defending a judgment pursuant to App.R. 3(C)(2).
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY J. BOYLE, JUDGE
JAMES J. SWEENEY, P. J. CONCURS. KENNETH A. ROCCO, J., CONCURS IN PART WITH SEPARATE CONCURRING OPINION.
[1] Case originated when mother filed a complaint with CSEA to obtain child support. Mother did not request past care support for the two children.
The trial court's judgment entry states the administrative hearing was held April 26, 2004.
[2] CSEA ordered father to pay child support in the amount of $810.96 per month ($405.48 per month per child). First payment was due immediately upon issuance of the order. The order was issued on May 26, 2004.
[3] Child named after Ronald Pesek's father.
[4] CSEA ordered child support in the amount of $810.96 per month ($405.48 per month per child). First payment was due immediately upon issuance of the order. The order was issued on May 26, 2004.
[5] At oral arguments, Father argued for prepayment credit but Father did not file a notice of cross appeal pursuant to App.R. 3(C)(1) and not defending a judgment pursuant to App.R. 3(C)(2) therefore, this court will not address this issue.