McQUEEN, Appellant,

v.

HAWKINS, Appellee.

[Cite as *McQueen v. Hawkins* (1989), 63 Ohio App.3d 243.]

Court of Appeals of Ohio,
Lucas County.

No. L-88-411.

Decided Aug. 18, 1989.

*David F. Wiley,* for appellant.

HANDWORK, Presiding Judge.

This matter is before the court on appeal from the November 23, 1988 judgment of the Lucas County Court of Common Pleas.

 On June 26, 1987, appellant, Alvenia V. McQueen, filed a paternity action against appellee, Johnny Hawkins. In connection with the action, appellant also requested that the court order appellee to pay appellant's reasonable attorney fees incurred for securing child support. The referee denied the request, and appellant objected on the ground that the denial of an award of attorney fees in a paternity action brought to enforce the father's statutory obligation to support his children would deny the mother equal protection of the law since attorney fees are awarded in divorce actions. The court, however, adopted the referee's recommendations holding that there was no statutory authorization for payment of attorney fees in the paternity suit. Appellant has, therefore, sought an appeal to this court asserting the following error:

"The trial court's failure to award reasonable attorney fees was an abuse of discretion and violated Plaintiffs' (mother and child) rights of equal protection under the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States."

Appellant contends that it is unconstitutional to refuse to pay attorney fees in a paternity action which involves a child support order, when such fees are allowable in a divorce proceeding. She argues that such a distinction between illegitimate and legitimate children violates the equal protection rights of the child.

Section 2, Article I, Ohio Constitution, and the Fourteenth Amendment to the United States Constitution guarantee every person equal protection under the law. Both constitutional provisions place the same limits on governmental classifications. *Kinney v. Kaiser Aluminum & Chemical Corp.* (1975), 41 Ohio St.2d 120, 123, 70 O.O.2d 206, 207–208, 322 N.E.2d 880, 882–883.

██ The equal protection guarantee is designed to ensure that similar people are treated in a similar fashion. *Colgate v. Harvey* (1935), 296 U.S. 404, 422–423, 56 S.Ct. 252, 255–256, 80 L.Ed. 299, 307. However, this does not bar classification by the government. The constitutional guarantee only prevents invidious discrimination. *Harris v. McRae* (1980), 448 U.S. 297, 322, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784, 808. Unless a fundamental right or suspect classification is involved, the classification is constitutional if it is rationally related to a legitimate end of government. Classification involving a fundamental right or based upon a suspect class is not premised upon a legitimate factor unless it is necessary to promote a compelling governmental interest. *City of Cleburne v. Cleburne Living Center, Inc.* (1985), 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313.

██ A distinction based upon illegitimacy is not a suspect classification requiring strict scrutiny by the court. However, it mandates more scrutiny than the rational basis test utilized for social and economical regulation. *Trimble v. Gordon* (1977), 430 U.S. 762, 767, 97 S.Ct. 1459, 1463, 52 L.Ed.2d 31, 37, 4 O.O.3d 296, 298. Because illegitimate children have, historically, been unfavorably treated, the court requires that governmental classification based upon this criterion be substantially related to a legitimate end of government. *Pickett v. Brown* (1983), 462 U.S. 1, 8, 103 S.Ct. 2199, 2204, 76 L.Ed.2d 372, 379. Thus, illegitimate children may not be invidiously discriminated against by denying them the benefits legitimate children receive. *Mills v. Habluetzel* (1982), 456 U.S. 91, 93, 102 S.Ct. 1549, 1551, 71 L.Ed.2d 770, 774. Access to such benefits must also be scrutinized to ensure that it is not merely illusory. *Id.* at 97, 102 S.Ct. at 1553, 71 L.Ed.2d at 776. Any distinction that appears to be a sanction on illegitimates to attempt to influence the actions of men and women regarding their relationships will be found unconstitutional. *Trimble v. Gordon, supra,* 430 U.S. at 769, 97 S.Ct. at 1464–1465, 52 L.Ed.2d at 38–39.

However, in the case before us, the classification is not really based upon the child's status; rather, it is based upon the mother's status, *i.e.,* whether she is a married or unmarried woman seeking child support. Therefore, the rational basis test would be applicable. Because of the tie with the illegitimacy aspect, it may be appropriate to use a more heightened scrutiny. However, this statute fails even under the minimal scrutiny of the rational basis test because the legislature has no legitimate interest in making this classification.

Historically, the courts held that a husband was not liable for legal services rendered to his wife for divorce. However, if the services were rendered for purpose of alimony and support of minor children, the husband would be liable under R.C. 3103.03 [1] for such legal services since they constitute "necessaries" supplied to the spouse. *Dworken v. Miller* (App.1950), 57 Ohio Law Abs. 277, 94 N.E.2d 105.

Furthermore, the statutory provisions for temporary alimony were interpreted to include reasonable attorney fees as part of the award for "sustenance and expenses" pending the divorce action and at the conclusion of the action. *Stuart v. Stuart* (1944), 144 Ohio St. 289, 29 O.O. 432, 58 N.E.2d 656; *Gage v. Gage* (1956), 165 Ohio St. 462, 60 O.O. 117, 136 N.E.2d 56, paragraph three of the syllabus; and *Wolf v. Friedman* (1969), 20 Ohio St.2d 49, 49 O.O.2d 306, 253 N.E.2d 761. Although this section of the code has now been repealed, Civ.R. 75(M) replaces it with substantially the same language for payment of alimony *pendente lite* for sustenance and expenses. The determination of whether the attorney fees to be paid as part of alimony are reasonable is subject to the considerations of several factors set forth in *Swanson v. Swanson* (1976), 48 Ohio App.2d 85, 90–91, 2 O.O.3d 65, 68, 355 N.E.2d 894, 898.

Therefore, the award of reasonable attorney fees may be rendered for the benefit of one spouse as part of an alimony award or as a "necessary" that a husband has a statutory duty to provide his wife and minor children.

This rule was expanded in *Blum v. Blum* (1967), 9 Ohio St.2d 92, 38 O.O.2d 224, 223 N.E.2d 819, to include attorney fees incurred in a post-divorce decree proceeding regarding the modification or enforcement of prior orders to support minor children. *Id.* at the syllabus. The court based its holding on two premises: First, that the court had retained jurisdiction regarding such support orders and therefore may award attorney fees to the spouse who brought the action since attorney fees could have been awarded in the original divorce proceeding. Second, since the husband has a statutory duty to provide necessaries for his wife and minor children, any attorney fees incurred to enforce that duty may be charged to the husband. Otherwise, the statutory provisions imposing such a duty upon the husband would be meaningless.

However, the paternity statutes (R.C. Chapter 3111) do not provide for payment by the father of a mother's reasonable attorney fees incurred in

---

**1.** R.C. 3103.03 provided, in pertinent part, that "[t]he husband must support * * * his wife, and his minor children out of his property or by his labor. * * * If he neglects to support his wife, any other person, in good faith, may supply her with necessaries for her support, and recover the reasonable value thereof from the husband unless she abandons him without cause."

connection with obtaining an order to establish the father's duty to support his child. The statute does, however, provide for attorney fees to be paid in contempt actions for failure to comply with the support order issued during the paternity action. R.C. 3111.13(F).

The issue raised in the case *sub judice* was also raised in *Stevenson v. Woods* (Jan. 4, 1985), Lucas App. No. L–84–316, unreported, 1985 WL 8364, wherein this court upheld the denial of attorney fees because there was no statutory authority for awarding attorney fees and avoided the constitutional ramifications of the lack of such statutory authority. This holding is consistent with the holdings of other courts. See *Sutherland v. Sutherland* (1989), 61 Ohio App.3d 154, 572 N.E.2d 215; *Dunson v. Aldrich* (1988), 54 Ohio App.3d 137, 561 N.E.2d 972; *Lillie v. Dawson* (June 27, 1984), Columbiana App. No. 82–C–58, unreported, 1984 WL 2751; and *Baugh v. Carver* (1981), 3 Ohio App.3d 139, 141, 3 OBR 157, 159, 444 N.E.2d 58, 61. The equal protection issue has been avoided by other courts on the ground that the appellant had failed to raise it at the trial level. *Dunson v. Aldrich, supra,* and *Jelen v. Price* (1983), 9 Ohio App.3d 174, 177, 9 OBR 284, 286, 458 N.E.2d 1267, 1269.

The case before us requires that we face the issue head on: Should a woman be treated differently with regard to the obtainment of child support based upon the marital status of the parents at the time of the child's birth?

The Uniform Parentage Act, the model for Ohio's act, included attorney fees as costs to be awarded. Ohio therefore intentionally excluded this provision. *Dunson v. Aldrich, supra.* The legislative history of the act fails to indicate the reason behind this deviation from the uniform act. Furthermore, the father of the child did not file a response brief to present a possible rationale behind this change. Therefore, we must speculate as to the goals sought to be achieved by the state in denying attorney fees in a paternity action.

We recognize that the marital relationship creates some unique benefits and duties. However, should marriage be the distinguishing factor upon which the legislature determines when attorney fees are "costs" to be paid by the father regarding the mother's obtainment of the child support order? We think not. If the legislature seeks to encourage marriage (which may not be an appropriate goal in the first place), the distinction in this case clearly tells fathers that it is economically less burdensome to have children out of wedlock.

When we examine the function of the parentage act, it is clear that its key purpose is to provide a judicial process for imposing the burden of child support upon the unwed father rather than solely upon one parent or the

state, thereby placing illegitimate children on the same grounds as legitimate children. A parallel purpose underlies the statutes which provide for a non-custodial parent to pay child support upon divorce or dissolution of the marriage. From this point of view, there is no legitimate reason for allowing attorney fees as costs in a divorce action but not in a paternity action.

Therefore, we conclude that the failure of the legislature to include in the parentage act a provision for payment of attorney fees as "costs" denies the mother equal protection of the law. Accordingly, we find appellant's sole assignment of error well taken. ·

■ Appellant has also requested that we order appellee to pay appellant's attorney fees with regard to this appeal. App.R. 23 provides that we may order attorney fees to be paid by the losing party if the appeal is found to be frivolous. Upon due consideration, we find that this appeal was worthy of review. Therefore, we hereby deny appellant's request.

Wherefore, we find that substantial justice has not been done the party complaining. The judgment of the Lucas County Court of Common Pleas is reversed and the cause is remanded to the trial court for assessment of attorney fees incurred in connection with the paternity action. Pursuant to App.R. 24, costs are assessed against appellee.

*Judgment reversed.*

CONNORS and GLASSER, JJ., concur.