CLARK, Appellant,

v.

JOSEPH et al., Appellees.

[Cite as *Clark v. Joseph* (1994), 95 Ohio App.3d 207.]

Court of Appeals of Ohio,
Summit County.

No. 16264.

Decided June 8, 1994.

---

*Sharon Berg,* for appellant.

*Randal Lowry,* for appellees.

DICKINSON, Judge.

This is an appeal from a judgment entered by the Summit County Juvenile Court in a paternity action. Karen Clark (the plaintiff) successfully demonstrated that Michael Joseph (the defendant) was the father of her child, and the trial court directed him to pay her child support of $1,000 per month. Clark has appealed to this court and has argued that the trial court incorrectly denied her an award of attorney fees against Joseph. Specifically, she has contended that, inasmuch as R.C. 3105.18(H) permits recovery of attorney fees incurred by a party to a divorce action in establishing an entitlement to child support, the absence of a similar provision allowing recovery of attorney fees incurred by a party who has established an entitlement to child support through a paternity action denied her equal protection of the law as guaranteed by the United States Constitution and the Constitution of the state of Ohio.[1] This court affirms the decision of the trial court because Ohio's policy of permitting a party to a divorce action to recover attorney fees incurred in establishing a right to child support

---

1. For purposes of this opinion, any discussion of actions for divorce includes actions for legal separation.

while not permitting a party to a paternity action to do so has a substantial relationship to an important state interest.

## I

Clark filed this action against Joseph on February 12, 1991. She alleged that she was then pregnant and that Joseph was the father of her unborn child. The child, Michael J. Clark, was born on June 11, 1992. A jury before whom this matter was tried determined that Joseph was the child's father, and the trial court awarded Clark child support of $1,000 per month. Clark then moved for an award of attorney fees. While she acknowledged that there was no statutory authority for such an award in a paternity action, she argued that the absence of such authority denied her equal protection of the law. The trial court denied her request for attorney fees:

"There is no statutory authority for awarding attorney fees in a paternity action, and the Court is unpersuaded by Plaintiff's argument that the failure to do so violates the equal protection clause of the Constitution."

Clark has appealed that denial to this court.

## II

Clark's sole assignment of error is that the trial court's refusal to award her reasonable attorney fees denied her equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution and Section 2, Article I of the Constitution of the State of Ohio. The guarantee of equal protection prohibits states from extending benefits to one class of people while denying those benefits to another, similarly situated, class of people. A mother who seeks an award of child support from her husband as part of a divorce proceeding is able, pursuant to R.C. 3105.18(H), to move for an award of the attorney fees she incurs in that effort. There is, however, no similar statutory authority for an award of attorney fees to a mother who seeks an award of child support in a paternity action against a man to whom she is not married.[2]

In *McQueen v. Hawkins* (1989), 63 Ohio App.3d 243, 578 N.E.2d 539, the Court of Appeals for the Sixth District reviewed a case very similar to this one. In that case, as in this case, the trial court denied attorney fees to a successful plaintiff in a paternity action. The appellate court ruled that the different treatment of

---

2. R.C. Chapter 3111, which provides the statutory authority for paternity actions in Ohio, is modeled after the Uniform Parentage Act. Section 16 of The Uniform Parentage Act includes authority for a court to "order reasonable fees of counsel * * * and other costs of the action * * * to be paid by the parties in proportions and at times determined by the court." The Ohio legislature, however, omitted that authority from R.C. Chapter 3111.

mothers seeking child support as part of a divorce action and mothers seeking child support through a paternity action was a violation of equal protection. It reversed the trial court's judgment and remanded "for assessment of attorneys fees incurred in connection with the paternity action." *Id.* at 248, 578 N.E.2d at 542. Clark has urged this court to follow the Sixth District's decision in *McQueen* and remand this case to the trial court for assessment of the attorney fees she incurred in establishing Joseph's paternity and his child support obligation.[3]

The guarantee of equal protection does not prohibit states from ever treating different people differently:

"The equal protection clause guarantees that similar individuals will be dealt with in a similar manner by the government. It does not reject the government's ability to classify persons or 'draw lines' in the creation and application of laws, but it does guarantee that those classifications will not be based upon impermissible criteria or arbitrarily used to burden a group of individuals. If the government classification relates to a proper governmental purpose, then the classification will be upheld. Such a classification does not violate the guarantee when it distinguishes persons as 'dissimilar' upon some permissible basis in order to advance the legitimate interests of society. Those who are treated less favorably by the legislation are not denied equal protection of the law because they are not similarly situated to those who receive the benefit of the legislative classification." Nowak & Rotunda, Constitutional Law (4 Ed.1991) 570, Section 14.2.

Different types of governmental classifications are subjected to different standards of equal protection analysis. Classifications based upon race or national origin and classifications which affect a person's fundamental rights are unconstitutional unless they are narrowly tailored to meet a compelling or overriding government interest (the "strict scrutiny test"). *Id.* at 575, Section 14.3. Classifications based on gender or illegitimacy must have a substantial

---

3. A violation of equal protection because of "underinclusion" (benefiting a divorcing mother seeking child support and not benefiting a mother seeking child support from a man to whom she is not married) may be cured by terminating all coverage or by extending coverage to the omitted group:

"Where a statute is defective because of underinclusion there exist two remedial alternatives: a court may either declare it a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by exclusion." (Citations omitted.) *Welsh v. United States* (1970), 398 U.S. 333, 361, 90 S.Ct. 1792, 1807–1808, 26 L.Ed.2d 308, 331 (Harlan, J., concurring). See *Weinberger v. Wiesenfeld* (1975), 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514. If at all possible, the legislature should be given an opportunity to cure a statutory scheme that offends equal protection through underinclusion. In some situations, however, it becomes necessary for courts to choose between the potential remedies. See *Orr v. Orr* (Ala.App.1979), 374 So.2d 895, 897.

relationship to an important government interest (the "intermediate test"). *Id.* at 576, Section 14.3. Other classifications will be upheld if it is conceivable that the classification bears a rational relationship to the achievement of a legitimate state interest (the "rational relationship test"). *Id.* at 574–575, Section 14.3.[4]

In *McQueen,* the court held that the distinction between mothers seeking child support in a divorce action and mothers seeking child support in a paternity action was a type of distinction that needed only to survive the rational relationship test to be upheld. It concluded, however, that the distinction failed that test.[5]

The parties to this case appear to agree that the distinction at issue need only survive the rational relationship test to be upheld. This court has concluded that it does survive that test. Further, this court has also determined that, even if the appropriate test is the stricter intermediate test, the distinction at issue survives that test as well.

In analyzing the issue presented in *McQueen,* the court focused on the purpose of allowing a mother to recover child support from her child's father:

"When we examine the function of the parentage act, it is clear that its key purpose is to provide a judicial process for imposing the burden of child support upon the unwed father rather than solely upon one parent or the state, thereby placing illegitimate children on the same grounds as legitimate children. A parallel purpose underlies the statutes which provide for a non-custodial parent to pay child support upon divorce or dissolution of the marriage." *Id.,* 63 Ohio App.3d at 247–248, 578 N.E.2d at 542.

Based upon that focus, the court concluded that there was no legitimate reason for a distinction between mothers seeking child support as part of a divorce action and mothers seeking child support in a paternity action:

"From this point of view, there is no legitimate reason for allowing attorney's fees as costs in a divorce action but not in a paternity action." *Id.* at 248, 578 N.E.2d at 542.

The court's focus in *McQueen,* however, was misplaced. If child support were recoverable in divorce actions but not in paternity actions, analysis of that distinction would be properly focused on the purpose of child support. The

---

4. Equal protection as guaranteed by the Ohio Constitution is coextensive with equal protection as guaranteed by the United States Constitution. See *State v. Buckley* (1968), 16 Ohio St.2d 128, 45 O.O.2d 469, 243 N.E.2d 66.      /

5. The court in *McQueen* noted that, inasmuch as it believed that the distinction at issue could not survive the rational relationship test, if, because of the distinction's connection to illegitimacy, the intermediate test was properly applicable, the distinction would obviously fail that stricter test as well.

legislative scheme at issue, however, does not prevent a person in Clark's position from obtaining child support. Rather, it denies her an opportunity to recover attorney fees incurred in doing so. The proper focus for equal protection analysis, therefore, is upon the state's purpose in permitting recovery of attorney fees in divorce actions.

■ In *Stuart v. Stuart* (1944), 144 Ohio St. 289, 290, 29 O.O. 432, 433, 58 N.E.2d 656, 657, the Ohio Supreme Court held that attorney fees could be awarded under the statutory scheme as it then existed as a part of alimony. See *Gage v. Gage* (1956), 165 Ohio St. 462, 465, 60 O.O. 117, 119, 136 N.E.2d 56, 59. Spousal support has now replaced alimony under Ohio law. Pursuant to R.C. 3105.18(H), attorney fees are now recoverable in a divorce action as a part of spousal support. *Kelm v. Kelm* (1993), 68 Ohio St.3d 26, 29, 623 N.E.2d 39, 42. Proper equal protection analysis of the distinction at issue in this case requires consideration of the reason a spouse seeking child support in a divorce action may be awarded attorney fees as a part of spousal support.

Upon marrying, two people who each have an individual income-producing ability enter into an economic partnership. Often they contribute to that economic partnership in different ways. "[T]he economic success of the partnership depends 'not only upon the respective financial contributions of the partners, but also on a wide range of nonremunerated services to the joint enterprise, such as homemaking, raising children and providing the emotional and moral support necessary to sustain the other spouse in coping with the vicissitudes of life outside the home * * *.' " *Price v. Price* (1986), 69 N.Y.2d 8, 14, 511 N.Y.S.2d 219, 222, 503 N.E.2d 684, 687, quoting *Brennan v. Brennan* (1984), 103 A.D.2d 48, 52, 479 N.Y.S.2d 877, 880. Actions taken in pursuit of the interests of the economic partnership may enhance the individual income-producing ability of one of the spouses while harming the individual income-producing ability of the other. Perhaps one spouse will obtain an advanced degree or work extra hours outside the home, while the other spouse works extra hours inside the home, either as a full-time homemaker or in addition to being employed outside the home. As long as the economic partnership continues, however, both share in the fruits of their joint efforts.

■ Upon divorce, it is necessary for the assets of the economic partnership to be divided and distributed in an equitable manner. "[T]erminating a marriage is often approached by the courts as a dissolution of a partnership." *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 68, 554 N.E.2d 83, 88. Tangible assets of the partnership are divided and distributed pursuant to R.C. 3105.171. The individual income-producing abilities of the spouses, however, are intangible assets of the partnership. In the absence of spousal support, divorcing spouses would leave the economic partnership with their then current individual income-producing

abilities. The spouse who obtained the advanced degree or worked extra hours outside the home would receive the benefits of the enhancement to his or her individual income-producing ability that took place during the marriage while the spouse who worked extra hours inside the home would bear the burden of the harm done to his or her individual income-producing ability. In recognition of the fact that the individual income-producing abilities of both spouses at the end of a marriage are, to a degree, fruits of the roles they played during the marriage, R.C. 3105.18(C)(2) provides that each spouse is to be considered to have contributed equally to the production of marital income for the purpose of "determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support." It is reasonable for the spouse whose individual income-producing ability has been enhanced through the contributions of both spouses to assist the other spouse for a period following the divorce to enable that spouse to become self-supporting outside the marriage. If, because of the duration of the marriage, the age of the parties, and the roles played during the marriage, one spouse does not have the resources, ability, or potential to become self-supporting outside the marriage, it is reasonable that the other spouse provides support indefinitely. See *Kunkle v. Kunkle, supra,* 51 Ohio St.3d 64, 554 N.E.2d 83. Under either circumstance, spousal support is appropriate and reasonable because of the economic partnership that existed during the marriage.

Payment of attorney fees is often a necessary part of terminating a marital partnership. In considering a request for an award of attorney fees as part of a divorce action, a court is to determine whether the absence of such an award will prevent either party from fully litigating his or her rights, or protecting his or her interests, and whether the other party has an ability to pay such an award. To the extent one spouse has an ability to pay necessary fees incurred by the other spouse, while the spouse incurring those fees lacks that ability, it is appropriate for the court to shift the fees to the spouse who can afford to pay them because of the previous contributions made to the marital partnership by the spouse lacking the ability to pay. As with spousal support in general, an award of needed attorney fees furthers the goal of assisting the spouse receiving the award to become self-supporting or the alternative goal of providing for a spouse incapable of becoming self-supporting. If that spouse were forced to choose between using money needed to meet other expenses to pay attorney fees, or foregoing needed services of an attorney, the goals of providing spousal support would be thwarted.

The proper focus for equal protection analysis of the distinction about which Clark has complained in this case is upon the legislative purpose of allowing a mother, as a form of spousal support in a divorce action, to recover attorney fees

incurred in recovering child support. A mother who has not been married to the father of her child has not been a participant in an economic partnership in which she has contributed to the child's father's individual income-producing ability. If she is not self-supporting, it is not because of a role she played during a marriage to the child's father. The rationale for permitting recovery of attorney fees in a divorce action does not exist in a paternity action. Not only is there a rational basis for a distinction between married and unmarried mothers in the award of attorney fees, that distinction has a substantial relationship to the important government interest of ensuring that divorcing spouses are treated fairly and enabled to become self-supporting or, if they are incapable of becoming self-supporting, will be provided sufficient income to maintain life-styles as close as possible to those which were attained during their marriages.

The opportunity for a mother who seeks child support from her husband as part of a divorce proceeding to recover an award of attorney fees incurred in that effort, while a mother seeking child support from the father of her child in a paternity action has no similar opportunity, is not a violation of equal protection as guaranteed by the United States Constitution and the Constitution of the state of Ohio. Accordingly, Clark's assignment of error is overruled.

### III

Clark's assignment of error being overruled, the judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and BAIRD, J., concur.