**STATE EMPLOYMENT RELATIONS BOARD et al., Appellees,**

v.

**CITY OF CLEVELAND, Appellant.**

[Cite as *State Emp. Relations Bd. v. Cleveland* (1995), 106 Ohio App.3d 128.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 68096.

Decided Aug. 28, 1995.

*Betty D. Montgomery,* Attorney General, *Vincent T. Lombardo* and *Helen S. Carroll,* Assistant Attorneys General, Labor Relations Section, for appellee State Employment Relations Board.

*Joyce Goldstein & Assoc., Joyce Goldstein* and *Jonathan D. Newman,* for appellee Cleveland Building and Construction Trades Council.

*Duvin, Cahn & Hutton, Martin S. List* and *Frank W. Buck,* for appellant.

NAHRA, Judge.

Complainant-appellee, State Employment Relations Board (the "board"), has certified this case for review pursuant to R.C. 4117.02(L).[1] The apposite facts follow.

1. R.C. 4117.02(L) states in pertinent part:

Intervenor-appellee, Cleveland Building and Construction Trades Council ("council"), was a party to a collective bargaining agreement with respondent-appellant, city of Cleveland ("city"). The agreement contained a term providing for periodic wage increases. Since the agreement was to expire on April 30, 1993, prior to that date the parties entered negotiations concerning it. During these negotiations, the city was represented by the then named law firm of Duvin, Cahn & Barnard.

On March 15, 1993, the record reflects the parties met and discussed the wage increase provision contained in the agreement. At this meeting, the Council was represented by its executive secretary, Carl F. Gauntner. The city was represented by Marc J. Bloch, an attorney for the law firm.

Ultimately, the parties were unable to agree on the terms of a new collective bargaining agreement. The parties therefore submitted the matter to the Board for mediation upon the expiration of the old agreement. On June 17, 1993, Gauntner and Bloch notified the mediator that the parties were "still engaged in negotiations."

On June 28, 1993, Gauntner wrote a letter to Daniel Hauenstein, the city's Manager of Labor Relations. Therein, Gauntner informed Hauenstein that the council desired the city to put wage increases into effect retroactive to May 1, 1993; he also noted that "the existing agreement * * * has been extended by mutual agreement of both parties."

On July 13, 1993, the city responded through counsel that since the previous collective bargaining contract had expired, the city had "absolutely no obligation to implement any wage increases" after that date. The city defended its position with the observation that it was "completely consistent with the one taken by the * * * Council on health insurance co-payments when [the Council] insisted that such employee payments be deferred until the conclusion of negotiations."

On July 14, 1993, the council filed with the board an unfair labor practice charge against the city. In its statement of the facts constituting the charge, the council averred that although the collective bargaining agreement had expired, "the parties agreed to extend it through July 31, 1993." The council further

"Whenever the board determines that a substantial controversy exists with respect to the application or interpretation of this chapter and the matter is of public or great general interest, the board shall certify its final order directly to the court of appeals having jurisdiction over the area in which the principal office of the public employer directly affected by the application or interpretation is located. * * * If upon hearing and consideration the court decides that the final order of the board is unlawful or is not supported by substantial evidence on the record as a whole, the court shall reverse and vacate the final order or modify it and enter final judgment in accordance with the modification; otherwise, the court shall affirm the final order."

stated that "[n]ot only is the city obligated to continue to abide by the terms of the collective bargaining agreement because the parties agreed to extend its terms," but the city was attempting to implement a unilateral change. The council also accused the city of "bad faith bargaining."

On April 7, 1994, the board notified the city it had found probable cause to believe the city had violated R.C. 4117.11.[2] It attached the council's complaint to the notification. The complaint stated in paragraph 8 that the parties had agreed to extend the terms of the collective bargaining agreement on "March 15, 1993." The board set the cause for an evidentiary hearing on May 9, 1994; a prehearing conference was set for April 27, 1994.

On April 18, 1994, the city filed an answer to the complaint. Therein, the city admitted that it met with the council on March 15, 1993 "to discuss the negotiations," but denied it agreed to extend the collective bargaining agreement.

On April 25, 1994, the council filed a motion to intervene, which was subsequently granted, in order to present evidence at the hearing. That same day, the state of Ohio filed its prehearing statement which indicated that the only fact in dispute was whether on March 15, 1993, the parties had agreed to extend the terms of the collective bargaining agreement beyond April 30, 1993. Gauntner was listed as the sole witness to be called.

On April 25, 1994, the city also filed a prehearing statement. Therein, the city stated that it would establish it was not obligated to pay any wage increase and indicated that it would introduce as exhibits "notes of Marc J. Bloch, Esq. regarding March 15, 1993 meeting with Mr. Carl F. Gauntner."

On April 27, 1994, at the prehearing conference, the city revealed that it planned to call Marc J. Bloch as a witness to testify about the matters discussed at the March 15, 1993 meeting. At that point, both the state of Ohio and the council moved that the law firm be disqualified from representing the city. The hearing officer issued a show cause order and set the motion for hearing; however, by consent of the parties, the hearing was cancelled and the issue of the disqualification of the law firm was to be considered only on briefs.

Both the state of Ohio and the council argued in their briefs that under the circumstances, the law firm's representation of the city would constitute a violation of the Code of Professional Responsibility ("CPR"), specifically, Disci-

---

2. R.C. 4117.11 states in pertinent part:

"(A) It is an unfair labor practice for a public employer, its agents, or representatives to:
"* * *

"(5) Refuse to bargain collectively with the representative of his employees recognized as the exclusive representative or certified pursuant to Chapter 4117. of the Revised Code."

plinary Rule ("DR") 5–102(A).[3] They contended that since the board had authority "to establish standards of persons who practice before it" pursuant to R.C. 4117.02(H)(7), it also had authority to prevent such a violation. They therefore urged the board to disqualify the law firm and order the city to retain new counsel.

The city responded by arguing that it became aware of the significance of Bloch's testimony "only shortly before" the prehearing conference; thus, the motion to disqualify was merely a "tactic" and disqualification would "work serious and prejudicial hardship on the city." The city also contended the provisions of the CPR did not apply in board proceedings, the board had no authority to regulate attorneys, and to apply the provisions would violate the city's constitutional rights as a party to the proceeding.

Eventually, the hearing officer transmitted all the documents received on the issue to the board for determination. On October 26, 1994, the board issued its order and opinion granting the motion to disqualify the law firm. The board made the following findings in its order: (1) DR 5–101 and 5–102 apply to attorneys appearing before it; (2) continued representation of the city by the law firm would violate DR 5–102; and (3) none of the exceptions listed in DR 5–101(B)[4] were present, and, further, disqualification would not constitute a substantial hardship for the city. The board also found the matter an appropriate one for appellate review; thus, it was certified to this court.

The city presents the following as its sole assignment of error:

"The State Employment Relations Board erred in disqualifying the law firm that had been representing the city of Cleveland throughout the proceedings in

3. DR 5–102(A) states:
"If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that *he or a lawyer in his firm* ought to be called as a witness on behalf of his client, he *shall withdraw* from the conduct of the trial *and his firm, if any, shall not continue representation* in the trial, *except* that he *may* continue the representation and he or a lawyer in his firm may testify *in the circumstances enumerated in DR 5–101(B)(1) through (4)."* (Emphasis added.)

4. DR 5–101(B) states:
"A lawyer *shall not* accept employment in contemplated or pending litigation if he knows or it is obvious that *he or a lawyer in his firm* ought to be called as a witness, *except* that he may undertake the employment and he or a lawyer in his firm may testify:
"(1) If the testimony will relate *solely to an uncontested matter.*
"(2) If the testimony will relate *solely to a matter of formality* and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
"(3) If the testimony will relate *solely to the nature and value of legal services rendered* in the case by the lawyer or his firm to the client.
"(4) As to any matter, *if refusal would work a substantial hardship* on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case." (Emphasis added.)

this matter, having lacked the constitutional authority to regulate the practice of law, where the representation of a party before SERB is not the practice of law and where SERB unconstitutionally sought to regulate attorneys while not regulating nonattorneys who appear before SERB as representatives."

The city argues that in view of the explicit directive permitting nonattorneys to represent a party in board proceedings,[5] the merely quasijudicial nature of board proceedings, and the lack of any specific board regulation on the subject, the board overreached its authority in this case.  Each of the city's points has been considered and must ultimately be rejected.

R.C. 4117.02 establishes the powers and duties of the board, stating:

"(A)  There is hereby created the state employment relations board * * *.

" * * * *

"(E)  The board shall appoint an executive director and *attorneys, attorney-trial examiners*, mediators, arbitrators, members of fact-finding panels, directors for local areas, and other employees as it finds necessary for the proper performance of its duties and may prescribe their duties.  * * *

"(F)  The board shall select and assign examiners and other agents whose functions are to conduct hearings with due regard to their impartiality, *judicial temperament*, and knowledge.  * * *

" * * * *

"(H)  In addition to the powers and functions provided in other sections of this chapter, the board shall:

" * * * *

"(3)  Hold hearings pursuant to this chapter and, for the purpose of the hearing and inquiries, *administer oaths and affirmations, examine witnesses and documents, take testimony and receive evidence, compel the attendance of witnesses and the production of documents by the issuance of subpoenas, and delegate these powers to* any members of the board or *any attorney-trial examiner* appointed by the board for the performance of its functions;

" * * * *

"(7)  Notwithstanding section 119.13 of the Revised Code, *establish standards of persons who practice before it;*

"(8)  *Adopt*, amend, and rescind *rules and procedures and exercise other powers appropriate to carry out this chapter.  * * *"*  (Emphasis added.)

---

5.  Ohio Adm.Code 4117–1–12.

Moreover, the Ohio Supreme Court has also recognized the authority granted to the board pursuant to R.C. 4417.02(H) in the following terms:

"We have consistently held that the decision whether to proceed by rule making or adjudication to resolve a dispute lies primarily in the informed discretion of the administrative agency. [Citations omitted.]

"An administrative board has the authority *to use either quasi-legislative promulgation* of general rules designed to address a general issue *or to use a quasi-judicial proceeding when a specific dispute arises as a case before the board. Id.* [*NLRB v. Beech-Nut Life Savers, Inc.*, 406 F.2d 253] at 257. "To insist upon one form of action to the exclusion of the other is to exalt form over necessity." *Securities & Exchange Comm. v. Chenery Corp.* (1947), 332 U.S. 194, 202 [67 S.Ct. 1575, 1580, 91 L.Ed. 1995, 2002]. (Emphasis added.)" *Hamilton Cty. Bd. of Mental Retardation & Dev. Disabilities v. Professionals Guild of Ohio* (1989), 46 Ohio St.3d 147, 151, 545 N.E.2d 1260, 1265.

The board's decision in such a matter is entitled to deference by a reviewing court. *Id.* Furthermore, the board has explicitly promulgated a rule which grants hearing officers the authority to "exclude any person for improper conduct." Ohio Adm.Code 4117-1-11(A)(9). The board has previously exercised this authority to ensure the integrity of quasijudicial proceedings. *In re Cuyahoga Cty. Sheriff's Dept.* (May 15, 1985), SERB Case No. 85-021.

In this case, the board essentially determined that lawyers representing parties in proceedings before it are bound by the CPR. By implication, the board has indicated that an attorney or law firm refusing to comply with the CPR is engaging in "improper conduct." *In re Cuyahoga Cty. Sheriff's Dept., supra.* In view of the purpose behind the CPR, the board's action was entirely appropriate.

According to the Preface of the CPR:

"The Canons of this Code are statements of axiomatic norms, expressing in general terms *the standards of professional conduct expected of lawyers in their relationships with the public,* with the legal system, *and with the legal profession.* They embody the general concepts from which the Ethical Considerations and the Disciplinary Rules are derived.

"*The Ethical Considerations* are aspirational in character and represent the objectives toward which every member of the profession should strive. They *constitute a body of principles* upon which the lawyer can rely for guidance in many specific situations.

"*The Disciplinary Rules,* unlike the Ethical Considerations, *are mandatory* in character. The Disciplinary Rules state *the minimum level of conduct below which no lawyer can fall* \* \* \*." (Emphasis added.)

In *Mentor Lagoons, Inc. v. Rubin* (1987), 31 Ohio St.3d 256, 257, 31 OBR 459, 460, 510 N.E.2d 379, 380, the Supreme Court stated the general rule that "it is inappropriate for an attorney to testify on behalf of a client as in so doing he may breach ethical requirements," *viz.*, DR 5-102(A). The Supreme Court acknowledged that it is not a "flat prohibition," however:

"[W]hen the issue arises, any 'doubts should be resolved in favor of the lawyer['s] testifying and against his * * * continuing as an advocate.'

" * * *

"The Code of Professional Responsibility 'does not delineate rules of evidence but only sets forth strictures on attorney conduct.' *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equip. Corp.* (C.A.3 1976), 546 F.2d 530] *supra*, at 539. Consequently, in most jurisdictions, the rule barring an attorney from serving as a witness for his client *is a rule of ethics and not of law.*" (Emphasis added.) *Id.* at 258, 31 OBR at 461, 510 N.E.2d at 381.

When the issue arises in a proceeding, the Supreme Court left the resolution of this matter to the sound discretion of the trier of fact:

"A trial court has the 'inherent power to regulate the practice before it and *protect the integrity of its proceedings* * * *' including the ' "authority and duty to see to the ethical conduct of attorneys * * *." ' *Royal Indemnity Co. v. J.C. Penney Co.* (1986), 27 Ohio St.3d 31, 33–34, 27 OBR 447, 449, 501 N.E.2d 617, 620; see, also, *D.H. Overmyer Co., Inc. v. Robson* (C.A.6, 1984), 750 F.2d 31, 33; Canon 3A(2) of the Code of Judicial Conduct. *This includes the inherent authority of dismissal or disqualification from a case if an attorney cannot, or will not, comply with the Code of Professional Responsibility when representing a client. Id. This power is distinct from the exclusive authority of the Supreme Court of Ohio over attorney disciplinary proceedings, and does not conflict with such power. Id.* See, also, Section 5(B), Article IV of the Ohio Constitution and Gov. Bar R. V; *Smith v. Kates* (1976), 46 Ohio St.2d 263, 75 O.O.2d 318, 348 N.E.2d 320; *Brotherhood of Ry. Carmen of the United States & Canada v. Delpro Co.* (D.Del.1982), 549 F.Supp. 780. Indeed we hasten to approve and encourage courts throughout this state in their efforts *to halt unprofessional conduct* * * *." (Emphasis added.) *Id.* at 259–260, 31 OBR at 462, 510 N.E.2d at 382.

Thus, the trier of fact's decision to disqualify an attorney on the basis of a probable violation of the CPR is part of its "inherent authority." It is merely a protective action to ensure the integrity of its proceedings rather than a usurpation of the Supreme Court's authority to regulate the practice of law. Hence, it is not improper. *Brown v. Dist. of Columbia Bd. of Zoning Adjustment* (D.C.App.1980), 413 A.2d 1276.

The city attempts to overcome the language of *Mentor Lagoons* by contending that because proceedings before the board are merely quasijudicial in nature, the CPR and its Disciplinary Rules have no application. This contention is disingenuous.

Initially, it must be noted that the Supreme Court has interpreted the board's role in determining an unfair labor practice charge as equivalent to that of any other trier of fact such as a trial court. *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 260, 533 N.E.2d 264, 266. Other appellate districts have conformed to this characterization. See, *e.g.*, *Ray v. Ohio Unemp. Comp. Bd. of Rev.* (1993), 85 Ohio App.3d 103, 619 N.E.2d 106.

■ Secondly, in view of the specific language of the Preface to the CPR, the type of proceeding in which an attorney takes part is irrelevant to the ethical considerations he must make. In a similar situation as that presented in this case, the court in *State Emp. Relations Bd. v. Springfield Local School Dist. Bd. of Edn.* (June 7, 1995), Summit App. No. 17012, unreported, 1995 WL 338506, stated that the attorneys "did not shed their lawyer's clothes simply by representing the Board before SERB. There is no dispute that [the law firm] was representing the Board *in its professional legal capacity* before SERB. As such, their *representation was governed by the Disciplinary Rules.* Presumably, [the law firm] was aware of this. To prohibit SERB, therefore, from enforcing the Disciplinary Rules *would allow any attorney practicing law before SERB to circumvent his or her ethical obligations.*" (Emphasis added.)

It is thus axiomatic that simply by virtue of his license an attorney becomes subject to the CPR and its accompanying rules of conduct in any professional setting, regardless of its nature.

The city makes the further argument that the board's action in disqualifying its law firm violated its constitutional right to equal protection of the law.[6] The city contends that since the board's own regulations permit nonattorneys to practice before it, and, the CPR applies only to attorneys, the board's enforcement of the CPR constitutes an unfairly disparate treatment of parties. This court does not find the city's argument persuasive.

■ "The guarantee of equal protection does not prohibit states from ever treating different people differently:

---

6. In addressing this argument, this court assumes that the city, as a party statutorily entitled to pursue this action, constitutes a "person" entitled to constitutional protection. *Hamilton Cty. Bd. of Mental Retardation & Dev. Disabilities v. Professionals Guild of Ohio* (1989), 46 Ohio St.3d 147, 150, 545 N.E.2d 1260, 1264–1265; cf. *Miami Univ. v. State Emp. Relations Bd.* (1990), 70 Ohio App.3d 514, 591 N.E.2d 415.

" 'The equal protection clause guarantees that similar individuals will be dealt with in a similar manner by the government. It does not reject the government's ability to classify persons or "draw lines" in the creation and application of laws, but it does guarantee that those classifications will not be based upon impermissible criteria or arbitrarily used to burden a group of individuals. If the government classification relates to a proper governmental purpose, then the classification will be upheld. *Such a classification does not violate the guarantee when it distinguishes persons as "dissimilar" upon some permissible basis in order to advance the legitimate interests of society. Those who are treated less favorably by the legislation are not denied equal protection of the law because they are not similarly situated to those who receive the benefit of the legislative classification.'* Nowak & Rotunda, Constitutional Law (4 Ed.1991), 570, Section 14.2." (Emphasis added.) *Clark v. Joseph* (1994), 95 Ohio App.3d 207, 211, 642 N.E.2d 36, 38–39.

■ Since there is neither a suspect class nor a fundamental right involved in this case, the board's "classification" of representatives in proceedings before it need only "bear a rational relationship to the achievement of a legitimate state interest * * *." *Id.* at 212, 642 N.E.2d at 39.

■ Clearly, as the Ohio Supreme Court has declared, Ohio has a legitimate interest in insuring that attorneys comply with ethical considerations so that the integrity of state-sponsored adjudicatory proceedings may be maintained. *Mentor Lagoons, Inc. v. Rubin, supra;* see, also, *In re Cuyahoga Cty. Sheriff's Dept., supra.*

■ Finally, although the city contends disqualification of its counsel in this case would be "unduly prejudicial" and would serve to condone "tactics" of the council, the record fails to support these contentions. Rather, there is ample evidence to support the board's conclusion that when the council filed the charge the city was on notice of the potential ethical problem involved and that substitution of counsel would not pose a substantial hardship. This court is required to give deference to the board's findings. R.C. 4117.02(L); *155 N. High, Ltd. v. Cincinnati Ins. Co.* (1995), 72 Ohio St.3d 423, 650 N.E.2d 869; *Lorain City Bd. of Edn. v. State Emp. Relations Bd., supra.* See, also, *Mentor Lagoons, Inc. v. Teague* (1991), 71 Ohio App.3d 719, 595 N.E.2d 392.

For the foregoing reasons, the city's sole assignment of error lacks merit and is, accordingly, overruled.

The decision of the State Employment Relations Board is affirmed.

*Judgment accordingly.*

JAMES D. SWEENEY, P.J., and PRYATEL, J., concur.

AUGUST PRYATEL, J., retired, of the Eighth Appellate District, sitting by assignment.